IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REGINALD JOHNSON, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 13-2743 |
| DETECTIVE JOHN DOE, et al., | : | |
| Defendants. | : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                                                              **April 29, 2014**

      Presently before this Court is Defendant, MHM Correctional Services', Motion to Dismiss the Second Amended Complaint filed by Plaintiff, Reginald Johnson, acting as the Administrator of the Estate of James Alton Stephens, Plaintiff's Response in Opposition, Defendant's Reply and Plaintiff's Sur-Reply thereto. For the reasons set forth below, Defendant's Motion is granted.

**I.    BACKGROUND**

    **A.    The Parties**

      Plaintiff, Reginald Johnson ("Plaintiff"), is the Administrator of the Estate of James Alton Stephens (the "Deceased"). Second Am. Compl. ¶ 1. The Deceased was a resident of 6329 North Norwood Street in Philadelphia, Pennsylvania, and passed away on or around June 3, 2011. Id.

      Defendant, MHM Correctional Services, Inc. ("Defendant"), is a corporation that provides mental health services for pretrial detainees and inmates housed in the City of

Philadelphia, Pennsylvania prison system.[1]  Id. ¶ 27.  Defendant's headquarters is located in Vienna, Virginia, with a local office situated at 8101 State Road in Philadelphia, Pennsylvania. Id.

  **B.**  **Factual History**

The following facts are alleged by Plaintiff.  On or about May 20, 2011, the Deceased was arrested by the Philadelphia Police Department following an incident involving an altercation between the Deceased, the Deceased's two children and several females inside the Deceased's home.  Id. ¶¶ 29-30.  The Deceased was charged with aggravated assault, simple assault, criminal conspiracy, possession of an instrument of crime and recklessly endangering another person.  Id. ¶ 31.  The Deceased was formally arraigned on these charges on May 21, 2011.  Id.  Subsequent to the Deceased's arraignment and his failure to post bail, the Deceased was transferred to Curran-Fromhold Correctional Facility ("CFCF").  Id. ¶ 32.  The Deceased was forty-eight years (48) old and had never been incarcerated prior to his arrest.  Id. ¶ 34.  Shortly after arriving at CFCF, the Deceased began exhibiting signs of erratic and psychotic behavior.  Id.  During the initial screening and evaluation of the Deceased by an intake worker at CFCF, whom Plaintiff believes is an employee of either Defendant or Corizon Healthcare Services, Inc. ("Corizon"), it was noted that the Deceased appeared to be "very psychotic - talking to people who were not there," was crying, exhibiting bizarre behavior, and that his thought process was illogical, tangential and easily derailed.[2]  Id.

---

[1] Plaintiff incorrectly identified MHM Correctional Services, Inc. as MHM Services, Inc. in the First and Second Amended Complaints.  Defendant corrected this error in the subsequent filings.

[2] Corizon provides various healthcare services at CFCF, and is also named as a Defendant in this action.

On May 22, 2011, the Deceased was evaluated by members of Defendant's staff.[3]  Id. ¶ 35.  The mental health evaluator employed by Defendant confirmed that the Deceased's thinking was delusional, his behavior was bizarre, and that he posed a risk of suicide.  Id.

The Deceased was released from CFCF on May 23, 2011.  Id.  At this time, there was no direct contact with members of the Deceased's family informing them of his mental health condition or of his release from incarceration.  Id.  The Deceased's common law wife, Tina Peterson ("Peterson"), did not discover that he had been released from CFCF until a later time. Id. ¶ 36.  Upon learning of the release, Peterson, with the help of family and friends, began a search for the Deceased.  Id.

On June 3, 2011, the Deceased's decomposed body was found behind the Fire Academy on Pennypack Avenue in Philadelphia, Pennsylvania.  Id. ¶ 37.  There were no apparent outward signs of trauma.  Id.  The Office of the Medical Examiner eventually determined the cause of death to be drowning.  Id. ¶ 38.

### C.   Procedural History

On May 17, 2013, Plaintiff filed a federal lawsuit pursuant to 42 U.S.C. §1983, 42 U.S.C. § 1988, the Fourth Amendment, the Due Process clause of the Fourteenth Amendment and Pennsylvania state law against numerous Defendants.  See Compl.  Defendant was not included as one of the numerous Defendants listed in the Complaint; however, Plaintiff did name Corizon and several unnamed employees of Corizon in their official and unofficial capacities.  Id.

During a phone call with counsel for Corizon on July 8, 2013, Plaintiff's counsel was

---

[3]Plaintiff does not designate these employees by name; rather, Plaintiff refers to them using the anonymous placeholder name of Samantha/Sam Doe, and, specifically, by their occupational position, such as "Intake Worker I."  See Second Am. Compl.

notified that Defendant, and not Corizon, provided the mental health services to the Philadelphia prison system. (See Pl.'s Second Mot. to Am. Compl.) More than two months later, counsel for Plaintiff had a copy of the Complaint hand delivered and emailed to local counsel for Defendant. (Id.)

On September 13, 2013, Plaintiff submitted a Motion for Leave to Amend the Complaint in order to substitute Defendant in place of Corizon Correctional Healthcare, Inc. as a Defendant in the suit. (See Pl.'s Mot. for Leave to Am.) The Motion was granted, and the Complaint was subsequently amended on October 2, 2003. (See First Am. Compl.) More than a month later, Plaintiff requested leave to amend the Complaint for a second time in order to correct an error in the First Amended Complaint. (See Second Am. Compl.) We granted Plaintiff's Motion as uncontested on November 12, 2013. (See Order Granting Second Mot. to Amend, Nov. 12, 2013.)

Defendant filed a Motion to Dismiss Plaintiff's Second Amended Complaint on February 17, 2014, arguing the following: that the two-year statute of limitations precludes Plaintiff's claims against Defendant; and/or alternatively, that Plaintiff's wrongful death and survival action claims should be dismissed with prejudice because they are not separate causes of action; and due to Plaintiff's failure to file the required certificate of merit. (See Def.'s Mot. to Dismiss.) Subsequent to this Motion, Plaintiff filed a Response in Opposition to which Defendant Responded and Plaintiff Replied. (See Pl.'s Resp. in Opps'n; Def.'s Resp.; Pl.'s Rep.) In light of these filings, we now address Defendant's Motion.

## II.   STANDARD OF LAW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency

of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Pursuant to Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has failed to set forth a claim from which relief may be granted. Fed. R. Civ. P. 12(b)(6); see also Lucas v. City of Phila., No. 11-4376, 2012 WL 1555430, at *2 (E.D. Pa. May 2, 2012) (citing Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005)). In evaluating a motion to dismiss, the court must view any reasonable inferences from the factual allegations in a light most favorable to the plaintiff. Buck v. Hamilton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2002).

The Supreme Court set forth in Twombly, and further defined in Iqbal, a two-part test to determine whether to grant or deny a motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The United States Court of Appeals for the Third Circuit ("Third Circuit") has noted that these cases signify the progression from liberal pleading requirements to more "exacting scrutiny" of the complaint. Wilson v. City of Phila., 415 F. Appx. 434, 436 (3d Cir. 2011).

Initially, the court must ascertain whether the complaint is supported by well-pleaded factual allegations. Iqbal, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Twombly, 550 U.S. at 555. Conclusions of law can serve as the foundation of a complaint, but to survive dismissal they must be supported by factual allegations. Iqbal, 556 U.S. at 679. These factual allegations must be explicated sufficiently to provide a defendant the type of notice that is contemplated by Rule 8. See Fed. R. Civ. P. 8(a)(2) (requiring a short and plain statement of the claim showing that the pleader is entitled to relief); see also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Where there are well-pleaded facts, courts must assume their truthfulness. Iqbal, 556

U.S. at 679.

Upon a finding of a well-pleaded complaint, the court must then determine whether these allegations "plausibly" give rise to an entitlement to relief. Id. at 679. This is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Plausibility compels the pleadings to contain enough factual content to allow a court to make "a reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. 544 at 570). This is not a probability requirement; rather plausibility necessitates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" Id. (quoting Twombly, 550 U.S. at 557). In other words, a complaint must not only allege entitlement to relief, but must demonstrate such entitlement with sufficient facts to nudge the claim "across the line from conceivable to plausible." Id. at 683; see also Holmes v. Gates, 403 F. App'x 670, 673 (3d Cir. 2010).

### III. DISCUSSION

Plaintiff asserts claims under 42 U.S.C. § 1983 against Defendant for wrongful death, survival action and due process violations. "Section 1983 is 'a vehicle for imposing liability against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution and laws.'" Massey v. Fair Acres Geriatric Ctr., 881 F. Supp. 2d 663, (E.D. Pa. 2012) (quoting Grammar v. John J. Kane Reg'l Ctrs.-Glen Hazel, 570 F.3d 520, 525 (3d Cir. 2009), *cert. denied*, 130 S.Ct. 1524 (2010)).

Defendant's argument for dismissal is premised on the applicable statute of limitations

for Plaintiff's claims. (See Def.'s Mot. to Dismiss.) Although there is no statute of limitations attached to claims brought under § 1983, the federal courts look at the analogous state law limitations periods for the respective offenses. Urrutia v. Harrisburg Cty. Police Dept., 91 F.3d 451, 457 n.9 (3d Cir. 1996). In Pennsylvania, a two-year statute of limitations exists for personal injury actions. See 42 Pa.C.S.A. § 5524. The countdown of this two-year period begins on the date that the injury is suffered. See Massey, 881 F. Supp. 2d at 667; Gleason v. Borough of Moosic, 609 Pa. 353, 361-62 (Pa. 2011).

In this case, the latest date the statute of limitations could arguably have commenced was upon the death of the Decedent on June 3, 2011. Id. Utilizing this date as the debarkation point and noting that Plaintiff filed the Amended Complaint and the Second Amended Complaint well after the expiration of the two year period, it is evident that Plaintiff's claims fall outside the applicable statute of limitations.[4] Plaintiff does not dispute this finding, and asserts that he did not know of the Defendant's role at the prison until after the expiration of the statute of limitations. (See Pl.'s Resp. in Opps'n, at 9.)

The statute of limitations is not an absolute bar to Plaintiff's suit. Where the statute of limitations has run, as in this case, the Federal Rules allow a plaintiff to add a new party upon demonstrating that the new party relates back to the filing of the original complaint. See Ferencz v. Medlock, 905 F. Supp. 2d 656, 665 (W.D. Pa. 2012). In such cases, the amended complaint is treated, for statute of limitations purposes, as if it had been filed at the time of the initial complaint. Garvin v. City of Phila., 354 F.3d 215, 220 (3d Cir. 2003) (citing Singletary v. Pa.

---

[4] In fact, Plaintiff filed the Amended Complaint over four months, and the Second Amended Complaint over five months, after the statute of limitations had expired on Plaintiff's claims.

Dep't of Corr., 266 F.3d 186, 189 (3d Cir. 2001)).  Rule 15 of the Federal Rules of Civil Procedure governs whether an amendment to a pleading relates back to the original pleading.[5] See Fed. R. Civ. P. 15(c).  "Where an amended pleading changes a party or a party's name, the Rule requires, among other things, that 'the party to be brought in by amendment . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.'"  Krupski v. Costa Crociere S.p.a., 560 U.S. 538, 548 (2010) (quoting Fed. R. Civ. P. 15(c)(1)(C)).  Thus, the legitimacy of Plaintiff's relation back argument and the overall viability of Plaintiff's claims against Defendant, depends on whether Plaintiff has demonstrated that Defendant "knew or should have known" that the claims would have been brought against it, if not for Plaintiff's mistake.  See Id.

Plaintiff's Response to Defendant's Motion to Dismiss is focused on the issue of relation back.  For various reasons, Plaintiff contends that the statute of limitations does not bar his claims because they relate back to the original complaint under Rule 15.  We now proceed to analyze the applicability of Rule 15.

---

[5]Specifically, Rule 15(c) requires Plaintiff to demonstrate that:

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; (and)

(C) the amendment changes the party or the naming of the party against whom a claim is asserted . . . within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment

>  (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
>  (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(B),(C).

It is an uncontested fact that Plaintiff failed to name Defendant in either the original Complaint, or within the applicable two-year statute of limitations period. (See Pl.'s Resp. in Opps'n, 9.) In an effort to escape the statute of limitations bar, Plaintiff argues that Defendant received the notice required under Krupski in three indirect ways. See Krupski, 560 U.S. at 548. First, Plaintiff asserts that Defendant should have known because several of its employees were named as Defendants in their individual and official capacities in the prior Complaints. Second, Plaintiff claims that under the "identity of interest method," Defendant and Corizon are so closely related that the institution of an action against one serves to provide notice to the other. Third, Plaintiff contends that Defendant would have been added as a third-party defendant under Rule 14 by Corizon, which gave Defendant additional notice.

As a final means of invoking Rule 15 to overcome the untimely nature of Plaintiff's claims against Defendant, Plaintiff argues that since the Court granted Plaintiff the opportunity to amend the Complaint to add Defendant, we have already determined that the Amended Complaints relate back under Rule 15.

Based upon the following reasoning, we deny Plaintiff's arguments, and find that the two year statute of limitations bars Plaintiff's claims against Defendant.

**1. Defendant should have known because several of its employees were named as Defendants in their individual and official capacities in the prior complaints.**

Plaintiff cites to Ferencz v. Medlock, 905 F. Supp. 2d 656 (W.D. Pa. 2012), to support his argument that Defendant "knew or should have known" of the claims against it because Plaintiff sued several employees of Defendant in their official capacities.[6] (See Pl.'s Resp. in Opps'n,

---

[6]Suits against employees in their official capacities, "generally represent only another way of pleading an action against an entity of which an officer is an agent." See Kentucky v. Graham, 473 U.S.

Mar. 3, 2014); Ferencz, 905 F. Supp. 2d at 668 (finding that the county was on notice when employees of the county were sued in their official capacities).   We do not find Plaintiff's argument persuasive as the case before this Court and Ferencz diverge in a crucial area - the naming of the individual defendants.

In Ferencz, the plaintiff sued several named defendants in their official and unofficial capacities.  The "practical effect" of charging "official defendants with liability in their official capacity" is to charge the entity with liability.  Giuffre v. Bissell, 31 F.3d 1241, 1247 n.6 (1994) (stating that county would be liable for employees charged in official capacity); see also Monell, 436 U.S. at 690 n.55 (finding that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent").  As such, the Court held that "whether it (defendant) knew or should have known that it would have been named as a defendant in this action is essentially irrelevant because Plaintiff did, in fact, name Fayette County as a Defendant in her original Complaint when she sued" certain named individuals in their official capacities.  Ferencz, 905 F. Supp. 2d at 668.

Here, unlike in Ferencz, Plaintiff neglected to specifically name the individual defendants, instead opting to name them using the anonymous placeholder of "Samantha Roe." See Am. Compl.  This is a critical distinction.  In order for claims against individuals in their official capacities to be treated as a suit against the government entity, the public entity must receive notice and an opportunity to respond.  See Kentucky, 473 U.S. at 165 (citing Brandon v.

---

159, 165-66 (1985) (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 n.55 (1978)).  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky, 473 U.S. at 166.  "It is not a suit against the official personally, for the real party in interest is the entity." Id.

10

Holt, 469 U.S. 464, 471-72 (1985)).  We find that the naming of anonymous defendants prevented Defendant from receiving the requisite notice, and, therefore, precludes the viability of Plaintiff's argument.

> **2. Defendant and Corizon are so closely related that, under the "identity of interest method," the institution of an action against one serves to provide notice to the other.**

Under the "identity of interest" method, Plaintiff argues that Defendant and Corizon are so closely related that the institution of the action against Corizon provided notice to Defendant of Plaintiff's claims.  The "identity of interest" method allows a plaintiff to impute knowledge upon a defendant for the purposes of relation back under Rule 15(c).  See Garvin v. City of Philadelphia, 354 F.3d 215, 222 (3d Cir. 2003).  "Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other."  Singletary, 266 F.3d at 193 (quoting 6A Charles Alan Wright et al., Federal Practice & Procedure § 1499, at 146 (2d ed. 1990)).

Plaintiff's "identity of interest" argument is premised on Corizon's knowledge of the identity of the local counsel for Defendant, which Plaintiff believes "clearly demonstrates that MHM (Defendant) and CHS (Corizon) are closely related in their business operations."  (See Pl.'s Resp. in Opps'n, at 14).  We do not agree.  Defendant and Corizon are competitors, and as such, do not share interests, rather their interests are at odds.  The similarity in the services each corporation provides and the respective knowledge of the identities of their legal counsel , connotes only that they operate in the same industry.  Consequently, Corizon and Defendant do not share an "identity of interests" from which Plaintiff may impute knowledge on Defendant.

11

Garvin, 354 F.3d at 222; Singletary, 266 F.3d at 193.

### 3.  Defendant would have been added as a third-party defendant under Rule 14 by Corizon, which gave Defendant additional notice.

Plaintiff contends that Defendant would have been added as a third-party defendant by Corizon under Rule 14, and, therefore, was on notice of Plaintiff's claims.  (See Pl.'s Resp. in Opps'n, at 15.)  We find Plaintiff's argument unpersuasive.  First, as a practical matter, Plaintiff is not in a position to predict what Corizon's strategy is regarding Defendant in this litigation.  Second, the sole focus at this juncture in the litigation is whether Defendant "knew or should have known" of Plaintiff's claims against it.  Krupski, 560 U.S. at 548.  Plaintiff's argument does nothing to advance a finding of adequate notice to Defendant, nor is it supported by any legal precedent.  A review of the record shows that Corizon did file a crossclaim against Defendant in this matter on December 5, 2013.  (See Def. Corizon's Answer and Cross Claim.)  However, this filing occurred over seven months after the expiration of the statute of limitations.  Id.

### 4.  The Court has already found that the First Amended Complaint relates back under Rule 15(c).

Plaintiff asserts that since we already allowed Defendant to be added as a party after the statute of limitations had expired, this Court has already determined that the First Amended Complaint relates back to the Original Complaint.  (See Pl.'s Resp. in Opps'n, at 10) (calling the issue moot); (Pl.'s Sur-Reply in Opps'n, at 2).  In reaching this conclusion, Plaintiff equates our Order granting leave to amend with curing his fatal deficiency of failing to provide Defendant with notice before the elapsing of the statute of limitations.  In doing so, Plaintiff overemphasizes the significance of our Order granting the Motion.

Our decision to grant Plaintiff leave to amend was influenced by several factors, which

cut against Plaintiff's argument for relation back.  First, Plaintiff's Motion was effectively unopposed as Defendant was not a named party in the litigation at this point.  The failure to name Defendant as a party denied Defendant an opportunity to show prejudice, and "prejudice to the non-moving party is the touchstone for the denial of an amendment." Arthur v. Maersk, Inc., 434 F.3d 196, 206 (3d Cir. 2006).  Absent a cognizable showing of prejudice by Defendant, we were obligated to grant leave to amend the complaint. Id.  Second, our decision to grant Plaintiff's Motion was affected by the liberality of Rule 15, which favors the amendment of the pleadings even where "a party has been less than perfect in the preparation and presentation of a case." Arthur, 434 F.3d at 206; see also Foman v. Davis, 371 U.S. 178, 182 (1962).  Finally, at the time, granting leave to amend appeared warranted as there were no obvious signs of "undue delay, bad faith . . . (or) futility," which would have justified denial of Plaintiff's Motion.[7] See Arthur, 434 F.3d at 204; see also Foman, 371 U.S. at 182 (holding that a court may deny leave to amend if doing so would be futile because the proposed amendment is barred by the statute of limitations).  Overall, the Court's ability to judiciously determine the issue of amendment was obscured by Plaintiff's failure to notify Defendant, which allowed the Motion to proceed unopposed.  Consequently, we accord little weight to our decision allowing for amendment in the context of Defendant's Motion to Dismiss.

As a result of our finding that leave to amend was improperly granted, we correspondingly deny Plaintiff's argument that the Second Amended Complaint would have been filed as a "matter of right" pursuant to Rule 15(a), if not for Defendant's refusal to accept service.

---

[7] Amendment is futile if "that claim would not be able to overcome the statute of limitations." Cowell v. Palmer Twp., 263 F.3d 286, 296 (3d Cir. 2001).

Defendant's alleged refusal to accept service is inconsequential because Plaintiff's claims are precluded by the statute of limitations, which renders Plaintiff's argument meritless.

**IV.   CONCLUSION**

A statute of limitations serves three basic purposes.  See Sperling v. Hoffmann-La Roche, Inc., 24 F.3d 463, 471 (1994).  First, it operates out of practicality and pragmatism to "spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost." Mills v. Habluetzel, 456 U.S. 91, 101 n.9 (1982) (quoting Chase Sec. Corp. v. Donaldson, 325 U.S. 304, 314 (1945)).  Second, the limitations period serves to put defendants on notice of adverse claims.  Crown, Cork & Seal v. Parker, 462 U.S. 345, 352 (1983).  Finally, a statute of limitation period "prevent(s) plaintiffs from sleeping on their rights." Id.

Relation back operates "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on the merits." Krupski, 560 U.S. at 550. "Though not expressly stated, it is well-established that the touchstone for relation back is fair notice, because Rule 15(c) is premised on the theory that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.'" Glover v. F.D.I.C., 698 F.3d 139, 145-46 (3d Cir. 2012) (quoting Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 149 n.3 (1984)).

In this case, it is clear that Defendant was not given the type of notice deemed necessary in Krupski to allow the relation back of Plaintiff's claims.  See Krupski, 560 U.S. at 548 (finding that relation back under Rule 15 requires that defendant knew or should have known).

Consequently, Plaintiff's claims do not relate back, and are dismissed as existing outside the applicable statute of limitations.  As a result of our dismissing all claims against Defendant due to the applicable statute of limitations, we do not entertain Defendant's separate arguments for the dismissal of the wrongful death and survival action claims.

      An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REGINALD JOHNSON,  :  | CIVIL ACTION |
| Plaintiff, : | |
| v.  : | No.  13-2743 |
| DETECTIVE JOHN DOE, et al., : | |
| Defendants. : | |

# O R D E R

**AND NOW,** this 29th day of April 2014, upon consideration of Defendant, MHM Correctional Services' ("Defendant"), Motion to Dismiss the Second Amended Complaint (Doc. 22), Plaintiff, Reginald Johnson's[1] ("Plaintiff") Response in Opposition, Defendant's Reply and Plaintiff's Response thereto, it is hereby **ORDERED** that Defendant's Motion is **GRANTED**.

It is **FURTHER ORDERED** that all claims against Defendant are **DISMISSED**.

BY  THE  COURT:

/s/ Robert F. Kelly
ROBERT  F.  KELLY
SENIOR  JUDGE

---

[1] Plaintiff has filed suit in his capacity as the Administrator of the Estate of James Alton Stephens.